IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CITY OF WINTER HAVEN,
a Florida municipal corporation,

    Plaintiff,

vs.                                                               Case No. 08:09CV-00190-T-17EAJ

CLEVELAND INDIANS BASEBALL
COMPANY, LP, an Ohio limited partnership,

    Defendant.
_____/

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISQUALIFY
PETERSON & MYERS, P.A. WITH SUPPORTING MEMORANDUM

Defendant ("the Indians"), by and through its undersigned attorneys, hereby opposes the Plaintiff's Motion to Disqualify Peterson & Myers, P.A. From Representing Defendant ("the Motion") filed and served on March 17, 2009 by Plaintiff ("the City") and respectfully submits the following supporting memorandum:

1.     Synopsis

The service by the undersigned's partner to the City as a Special Magistrate who discharges quasi-judicial functions in municipal code enforcement proceedings is not legal representation of the City as a client. This case, a contractual claim, has no relationship whatsoever with any actual or potential code enforcement proceedings before the Special Magistrate. For these reasons, there is no ethical conflict for the undersigned or his firm, either as a matter of the ethical standards governing the undersigned's firm as attorneys or the Special Magistrate as a public officer. Therefore, there is no basis for this Court to intervene and take the extreme measure of depriving The Indians of their attorneys of choice.

2. Legal & Factual Background

The Board, like any other Florida municipal code enforcement board, is a creature of Florida's Local Government Code Enforcement Boards Act ("the Act"). §162.01 et seq. Florida Statutes (2008). As such, the Act authorizes the Board to enforce provisions of the City's municipal code against violators by the imposition of civil fines which are then recorded as liens against a violator's property in the same manner as judgment liens. §162.09 Florida Statutes (2008). The Act specifically recognizes that the functions of the Board may be delegated to a Special Magistrate. §162.09(2)(d) Florida Statutes (2008). The City has thus empowered a Special Magistrate to exercise all quasi-judicial functions of the Board in conducting hearings and levying fines and liens pursuant to the Act. Art. III, Div. 2, §2-63 Code of Ordinances of the City of Winter Haven, Florida (2008) (See Exhibit "A", pg. 2).

According to the Act, in all code enforcement proceedings legal counsel is provided by the City Attorney. §162.09(2)(d) Florida Statutes (2008). Mirroring this statutory directive, the City's municipal code states that *the City Attorney provides legal counsel to the Special Magistrate for all purposes connected with the proceedings*. Art. III, Div. 2, §2-65(a)-(b) Code of Ordinances of the City of Winter Haven, Florida (2008) (See Exhibit "A", pg. 3). The municipal code goes on to make clear that the case for the City against the respondent is presented by City code enforcement staff, while the Special Magistrate acts in all respects as a judge: subpoenaing witnesses; administering oaths; taking testimony; making findings of fact; applying the law; and rendering a final judgment. Art. III, Div. 2, §2-65(f)-(j) Code of Ordinances of the City of Winter Haven, Florida (2008) (See Exhibit "A", pg. 3).[1] Any

---

[1] It should be noted that the City's municipal code uses the terms "Special Magistrate" and "Special Master" interchangeably, and uses one or the other indifferently in the code sections cited above and attached hereto.

respondent who disagrees with such judgment has an immediate statutory appeal to the Polk County Circuit Court where the judgment is reviewed de novo on the record of the proceedings before the Special Magistrate. §162.11 Florida Statutes (2008).

As shown in the contract attached to the Motion as Exhibit "A", the undersigned's partner Douglas Lockwood serves as the City's Special Magistrate for code enforcement proceedings by a renewable annual contract. See CMECF Doc. 15-2. Paragraph 4 of the annual contract specifically incorporates all of the judicial functions set forth in the City's municipal code described above as the scope of Mr. Lockwood's duties as Special Magistrate. See CMECF Doc. 15-2, pp. 3-4. Finally, in a provision which stands in stark contradiction to the position that the City has taken in the Motion, paragraph 3(b) of the annual contract reaffirms that that *Mr. Lockwood, as Special Magistrate, is actually represented by the City Attorney*. See CMECF Doc. 15-2, pg. 2.

The minutes of the City's code enforcement proceedings provided as part of Exhibit "C" with the Motion show that Mr. Lockwood has been discharging his duties as Special Magistrate, imposing fines and liens in cases where violations of the City's municipal code were found after the taking of evidence. See CMECF Doc. 15-4, pp. 4-11.

In the present case, the legal and factual issues placed before the Court by the City's Complaint have absolutely nothing to do with either violations of the City's municipal code or any code enforcement proceedings before the Special Magistrate, either actual or potential. Rather, the Complaint contains purely contractual claims and is based upon a lengthy written Use Agreement between the City and The Indians which provides detailed provisions governing the allocation between them of revenues and expenses from spring training games in Florida. Complaint, Exh. "A", ¶¶ 6.1, 6.3, 6.4, 9.1, 9.2, 9.3. According to the Complaint, the Defendant

has breached these provisions by withholding $107,000 in revenues from Defendant.  Complaint, ¶¶ 9, 13, 14, 15.   The root of this dispute is Defendant's withholding of revenues to indemnify Defendant for state taxes it paid under the Use Agreement.  Complaint, Exh. "A", ¶¶ 9.1 & 14.2; Exhs. "B" & "C".   One can search the four corners of the Complaint and find not even the slightest mention of the City's municipal code, much less any code violations.

3. Argument

It seems particularly unnecessary to explain what a Magistrate is, but suffice it to say that in both the federal and state courts Magistrates are exclusively judicial officers who serve by contract and wield all manner of judicial powers, up to and including presiding over the trial of certain kinds of cases and controversies.   See generally, Title 28 U.S.C. § 636; Rule 1.490(d) Florida Rules of Civil Procedure (2008).  Magistrates do not advise parties nor do they advocate their causes in court.   Therefore, the City's attempt to portray the relationship of the undersigned's partner with the City as one of lawyer and client is utterly inaccurate.  No doubt Mr. Lockwood serves the City in code enforcement proceedings, but the service is not as attorney.   Rather, as explained above, Florida statutory law makes clear that the City is represented in all such proceedings by its City Attorney.   Even more to the point, the City's municipal code and Mr. Lockwood's contract are equally clear that when Mr. Lockwood sits as Special Magistrate *it is him who is legally represented by the City Attorney, not vice-versa.*[2]

The City cites Rule 4-1.7 Rules Regulating the Florida Bar (2009) which appears in Section 4.1 of the rules entitled "Client-Lawyer Relationship" and is expressly premised upon the existence of an attorney/client relationship.  This being the case, neither Mr. Lockwood nor Peterson & Myers, P.A. stand in any form of conflict position vis-à-vis the City in representing

---

[2] It is therefore more than slightly ironic to find the City Attorney's signature on the Motion.

4

The Indians, because there is not the slightest suggestion that either Mr. Lockwood or the firm have ever rendered the City any legal representation or entered into any attorney/client relationship with the City.

The City also makes reference to the terms of Rule 4-1.11(d) <u>Rules Regulating the Florida Bar</u> (2009) covering lawyers rendering public service which provides in pertinent part that a lawyer currently serving as a public officer or employee:

> [S]hall not… participate in a matter in which the lawyer participated personally and substantially while in private practice or nongovernmental employment, unless the appropriate government agency gives its informed consent……

Rule 4-1.11(d)(2)(a) <u>Rules Regulating the Florida Bar</u> (2009). In this case, however, neither Mr. Lockwood nor the undersigned's firm participated in any way as counsel for the City in the matter raised by this lawsuit, which is the dispute over reimbursement or credit for taxes paid under the Use Agreement between the City and The Indians. Instead, as shown in the correspondence attached to the Plaintiff's Complaint in this action, the legal representative of the City was the same City Attorney. <u>Complaint</u>, ¶ 29, Exhs. "D" & "E". Moreover, it is obvious that the contractual claims in this suit have nothing to do with the City's code enforcement process or Mr. Lockwood's quasi-judicial role in it. The City is not charging that The Indians have violated the municipal code (e.g., failure to maintain property, trash accumulation, noise, etc.), but has only made a civil claim for breach of contract. Consequently, there is no chance at all that this case will ever come before Mr. Lockwood in any form in his role as Special Magistrate.

The City has not made reference to the only ethical rule which directly addresses instances in which attorneys in public service represent clients in legal actions adverse to the

public entity they serve. Florida's statutory <u>Standards of Conduct for Public Officers, Employees of Agencies, and Local Government Attorneys</u> provides in pertinent part:

> No public officer or employee of any agency shall have or hold any employment or contractual relationship with any business entity or any agency which is subject to the regulation of, or is doing business with, an agency of which he or she is an officer or employee...; *nor shall an officer or employee of an agency have or hold any employment or contractual relationship that will create a continuing or frequently recurring conflict between his or her private interest and the performance of his or her public duties or that would impede the full and faithful discharge of his or her public duties.* (emphasis added)

§ 112.313(7) <u>Florida Statutes</u> (2008). As the highlighted language indicates, the linchpin of this restriction is whether the representation of a client by the public lawyer will create a "continuing or recurring conflict" between his private practice and the performance of his office. In an instructive recent case applying this standard, <u>Fanizza v. State of Florida Commission on Ethics</u>, 927 So.2d 23 (Fla. 4th DCA 2006 (Fla. 4th DCA 2006), the Florida court of appeal summarized the relevant facts as follows:

> [W]hile appellant was on the city council, the council granted a special exception to allow townhouses in a single family zoning district by a four-to-one vote, with appellant dissenting. After that meeting, several of the property owners opposing the change asked appellant to represent them in a certiorari petition to the circuit court. Appellant agreed and named herself as a party, as well as the others, because she lived in the same zoning district that was affected by the vote. Appellant did not charge these clients a fee.
>
> She then filed a petition for writ of certiorari in the circuit court and requested attorney's fees under section 57.105, Florida Statutes (2001), on the ground that there was no justiciable issue of law in light of the city attorney's opinion that the council should not have allowed the rezoning. The city moved to dismiss the petition, which was denied, and appellant then wrote a letter to the attorney representing the city, stating that she and the other litigants would waive attorney's fees and costs if the city would rescind the rezoning. The council, in a private session not attended by appellant, considered the offer but did not resolve the case.
>
> The circuit court then granted the petition for certiorari, finding that the city failed to observe the essential requirements of law and due process. The court also found that the appellant did not have standing to be a party because she did not live

> close enough to the rezoned property. The court denied the request for attorney's fees. The city did not appeal.
>
> Appellant then filed a motion to tax costs, and appellant and the attorney representing the city agreed on $ 500 for costs, which did not have to go before the council. These costs were paid and reimbursed to the plaintiffs who had advanced the costs. Appellant received no attorney's fees, and she has stated that she never intended to seek fees for herself; she intended to use the possibility of a fee award against the city as only a bargaining tool for settlement.

Id. at 27. Despite the fact that the appellant attorney had undertaken such directly adversarial legal representation against the city she served as elected council member, the Florida Fourth Circuit Court of Appeal found no violation of the ethical standard cited above. Rather, the court reversed sanctions against the appellant attorney imposed by the trial court, finding:

> We have concluded, however, that appellant's involvement in the *Fanizza* case did not violate the statutory conflict of interest standards for public officials. Although appellant filed the petition for certiorari while she was a member of the council, her involvement in the litigation did not create a "continuing or frequently recurring conflict," nor did it "impede the full and faithful discharge" of appellant's public duties. All that this stipulated record shows is that the appellant, as a result of the conflict, was unable to attend one private session at which the city council and its lawyer discussed resolving the petition for certiorari.

Id. at 28.

The case for any violation of the ethical standard is even less plausible here than in the Fanizza case, cited above. There is no potential of "continuing or frequently recurring conflict" because this is a single case over a single contractual breach. Nor is there any potential of this case to "impede the full and faithful discharge" of Mr. Lockwood's duties as Special Magistrate because this case has no bearing on the City's process of code enforcement and no part of this matter will ever come before Mr. Lockwood as Special Magistrate.

    4.        Conclusion

The step of removing The Indians counsel of choice in this case would be a drastic one which is by no means justified by the showing the City makes in the Motion. The City has failed to show that the undersigned's partner has provided the City any form of legal representation by his service as a Special Magistrate. In fact, the City's moving papers appear to show the opposite, that the City provides him legal representation. The City has also failed to show any connection between these proceedings and the code enforcement duties of the Special Magistrate which would justify any concern of an effect on their code enforcement proceedings. For these reasons, the Motion should be denied by the Court.

Respectfully submitted, this 6th day of April, 2009.

                PETERSON & MYERS, P.A.

                By: **/S/ J. Davis Connor**_____
                    J. Davis Connor, Esq.
                    FBN 0713413
                    P. O. Box 24628
                    Lakeland, FL 33802-4628
                    Telephone: (863) 683-6511
                    Email: jconnor@petersonmyers.com
                    *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 6, 2009, I electronically filed the foregoing Motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record: Frederick J. Murphy, Jr., Boswell & Dunlap, LLP, P. O. Drawer 30, Bartow, FL 33831 and Warren Andrew Crawford, Esq. Boswell & Dunlap, LLP, P. O. Drawer 30, Bartow, FL 33831.

                              **/S/ J. Davis Connor**_____
                              J. Davis Connor, Esq.